UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

HEATHER HUFF                                        Case No. 6:17-cv-00223-JR
and TERRY BLAKELY,

                                                    OPINION AND ORDER
                            Plaintiffs,

        v.

MARION COUNTY HOUSING
AUTHORITY, a public body corporate and
politic,

_____ Defendant.

RUSSO, Magistrate Judge:

        Plaintiffs Heather Huff and Terry Blakely filed suit against defendant Marion County

Housing Authority ("MCHA") alleging deprivation of their Fourteenth Amendment rights in

violation of 42 U.S.C. § 1983. Plaintiffs move for partial summary judgment as to liability,

leaving the issues of damages to be determined at trial, and equitable relief. Defendant filed a

cross-motion for summary judgment on all claims. Oral argument was held on June 19, 2018. All

parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case

in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). See (doc. 10). For the reasons set

forth below, the motions are GRANTED in part and DENIED in part.

**BACKGROUND**

I.     <u>Statutory and Regulatory Framework</u>

The Department of Housing and Urban Development ("HUD") funds the Housing Choice Voucher ("HCV") program and "pays rental subsidies [to] eligible families [allowing them to] afford decent, safe and sanitary housing." 24 C.F.R. § 982.1(a)(1); <u>see also</u> 42 U.S.C. § 1437 *et seq*. This program is sometimes known colloquially as "Section 8" housing. <u>See</u> <u>Visintini v. Hayward</u>, 2009 WL 2413356, at *1 (N.D. Cal. Aug. 5, 2009). State or local government entities administer HCV programs through public housing agencies ("PHAs"). 24 C.F.R. § 982.1(a)(1). Eligible participating families are responsible for securing a private landlord willing to rent a unit that meets the program housing quality standards ("HQS"). 24 C.F.R. § 982.1(a)(2). If their unit is approved by the PHA, the participating family enters into a lease agreement; concurrently, the administering PHA enters into a Housing Assistance Payment ("HAP") contract with the landlord in accordance with HUD regulations. 24 C.F.R. § 982.1(a)(2). Subsequently, the PHA "must pay the housing assistance payment promptly when due to the owner in accordance with the HAP contract." 24 C.F.R. § 982.451(5)(i). To remain in the program, participants must comply with specific "family obligations" as defined by relevant regulations. <u>See</u> 24 C.F.R. § 982.551. For example, participants must: supply the PHA with all required information; allow the PHA to inspect units "at reasonable times after reasonable notice;" follow the terms of their unit's lease; and promptly notify the PHA of an eviction. <u>See</u> 24 C.F.R. § 982.551(b)–(i).

MCHA is a PHA as defined by 24 C.F.R. § 982 and charged with administering the federally subsidized HCV program to low income individuals and families in rural Marion County. Def.'s Mot. Summ. J. 2 (doc. 44). Plaintiffs, at various times, participated in MCHA's

HCV program. MCHA is governed by a Board of Directors, which establishes official policies. Mathews Decl. Ex. 1, at 31 (doc. 45-1).

## II.    Plaintiff Terry Blakely

Plaintiff Terry Blakely has been an HCV program participant since 2004, using a voucher administered by MCHA. Blakely Decl. ¶ 1 (doc. 42). In late August 2017, Blakely began house-sitting for her daughter while she attended a funeral. Id. at ¶¶ 3–4; Blakely Dep. 13–17 (doc. 40-21). Blakely returned to her residence briefly on September 4 and 11; she returned permanently on September 29. Id. at 17–20.

During the period Blakely was away from her residence, MCHA attempted to schedule two inspections of her unit. Rena-Doxier Decl. Exs. 22 (doc. 40-22); 23 (doc. 40-23).[1] Blakely did not receive either notice with sufficient time to be present for the scheduled inspections. Blakely Decl. ¶¶ 5–6 (doc. 42); Blakely Dep. 20–21 (doc. 40-21).

On October 3, MCHA issued Blakely a notice terminating her from the HCV Program with an "effective" date that same day. Rena-Doxier Decl. Ex. 24 (doc. 40-24). MCHA based the termination notice on a violation of family obligation #6: "The family must allow MCHA to inspect the unit at reasonable times and after reasonable notice." Id. The notice stated Blakely "was sent two (2) letters regarding inspection. Both times [Blakely] was not present in the home." Id. MCHA concedes the termination notice was "not in compliance with MCHA policy

---

[1] There is some ambiguity regarding the date MCHA scheduled the first inspection. The October 10 notice contained an inspection date of September 13 – i.e., nearly a month in the past. Rena-Doxier Decl. Ex. 22 (doc. 40-22). Blakely also asserts she only received one notice; however, Blakely's MCHA case file contains two notice letters. See, e.g., Blakely Dep. 23 (doc. 40-21); Rena-Doxier Decl. Exs. 22 (doc. 40-22); 23 (doc. 40-23). Because the actual dates of the scheduled inspections are not material to the Court's legal analysis, the Court need not resolve this ambiguity.

of providing 30 days between the date of the notice and the termination from the HCV program." Def.'s Mot. Summ. J. 6 (doc. 44).

On October 10, Blakely went to MCHA to complete her annual recertification paperwork and her caseworker informed her she had been terminated from the HCV program. Blakely Dep. 26 (doc. 40-21). Blakely requested a hearing that day; however, MCHA did not hold a hearing. Rena-Doxier Decl. Ex. 25 (doc. 40-25); Blakely Decl. ¶¶ 9–10 (doc. 42). Blakely then contacted an attorney, who reiterated her request for a hearing in a letter dated October 17, 2017. Rena-Doxier Decl. Ex. 26 (doc. 40-26); Blakely Dep. 27 (doc. 40-21)

MCHA again did not hold a hearing. Instead, MCHA scheduled and conducted an inspection of Blakely's residence on October 27, 2017. Blakely Decl. ¶¶ 10–11 (doc. 42); Marshall Dep. 30 (doc. 45-2); Mathews Decl. Ex. 6, at 30 (doc. 45-6). On November 1, after the inspection was complete, MCHA rescinded the notice of termination. Rena-Doxier Decl. Ex. 28 (doc. 40-28).

III.    Plaintiff Heather Huff

Huff is the mother of three children and has held an HCV from MCHA since 2002, with the exception of a brief period during 2016. Huff Decl. ¶ 1 (doc. 41). In April 2016, Huff's landlord issued a notice terminating Huff's tenancy without a stated cause. Id. at ¶ 6. Huff's landlord "wanted to remodel [the] unit, and they gave [her] a no cause eviction," and explained she "had done nothing wrong, it was nothing personal[.]" Huff Dep. 18 (doc. 40-5). Huff notified her MCHA case worker and requested a move voucher.[2] Huff Decl. ¶ 7 (doc. 41). MCHA

_____

[2] Move vouchers are portable from one approved HCV unit to another. See 24 C.F.R. § 982.354. A family may move to a new unit for multiple reasons: the family's current lease is terminated by their landlord's breach; mutual agreement between the family and landlord; the landlord gives the family notice to vacate, commences eviction proceedings, or has obtained a court judgment

required Huff's lease to include a standard HUD addendum, which necessitated that her landlord provide a cause for terminating her lease. HAP Contract § 8.d(3) (doc. 53-1); see also Gonzales Dep. 33 (doc. 40-2).

On May 10, Huff's landlord issued a second notice terminating her tenancy; however, this notice was issued for "cause" with a June 9 effective date. Rena-Doxier Decl. Ex. 8 (doc. 40-8). Huff contacted her MCHA caseworker regarding the "for cause" termination and again requested a move voucher. Huff Decl. ¶ 8 (doc. 41).

On June 1, MCHA issued Huff a notice of termination from the HCV Program. Id.; see also Rena-Doxier Decl. Ex. 9 (doc. 40-9). The termination notice stated Huff's eviction by her landlord was "FOR CAUSE TERMINATION" and her termination from the MCHA program was "DUE TO EVICTION BY LANDLORD," with an effective date of June 9. Rena-Doxier Decl. Ex. 9 (doc. 40-9) (capitalization in original). The June 1 termination notice afforded Huff ten days to request a hearing on her termination from the HCV Program. Id. That same day, Huff requested a hearing in writing, and the request was granted with a hearing scheduled for June 8. Rena-Doxier Decl. Ex. 10 (doc. 40-10); Rena-Doxier Decl. Ex. 11 (doc. 40-11).[3] Because the June 1 termination notice did not comply with MCHA policy, MCHA's executive director instructed Huff's case manager on June 2 to "[r]emove the termination on Heather Huff," and explained to the caseworker in an email she could not "terminate [Huff] until after a court order

---

allowing the landlord to evict the tenant; the tenant gives notice of lease termination, so long as the tenant has a right to terminate; etc. 24 C.F.R. § 982.354(b)(1)–(4). A PHA may deny a move voucher request if there are grounds for termination from the program or where the PHA does not have sufficient funding. 24 C.F.R § 982.354(e)(1)–(2).

[3] MCHA maintains Huff requested the termination notice in order to request a hearing to challenge her landlord's for cause lease termination. Def.'s Mot. Summ. J. 3 (doc. 44) (citing Mathews Decl. Ex. 3, at 5–6 (doc. 45-3)).

eviction has occurred or a hearing has taken place." Rena-Doxier Decl. Ex. 13 (doc. 40-13); see also Mathews Decl. Ex. 2, at 21–22 (doc. 45-2); Rena-Doxier Decl. Ex. 11 (doc. 40-11).

On June 20, Huff entered into a stipulated move out agreement with her landlord where she agreed to vacate the premise by July 15. Rena-Doxier Decl. Ex. 14 (doc. 40-14). On July 1, MCHA issued Huff a second notice of termination from the HCV program effective July 15, and listed four family obligations Huff allegedly violated. Rena-Doxier Decl. Ex. 15 (doc. 40-15). Specifically, MCHA alleged Huff violated family obligations:

- #7 The family is responsible for any HQS (Housing Quality Standards) breach . . . beyond the normal wear and tear caused by any member of the household or guest.
- #9 The family must give MCHA a copy of any owner eviction notice including lease violation notices within 3 business days of receipt.
- #13 The family must promptly notify MCHA in writing within 10 business days if any family member no longer resides in the unit.
- # 16 The family must not commit any serious or repeated violation of the lease[.]

Id. (emphasis removed).[4]

On July 8, Huff again requested a hearing, although one was never scheduled. Rena-Doxier Decl. Ex. 16 (doc. 40-16). Huff declared she never received a response to her hearing request. Huff Decl. ¶ 17 (doc. 41). MCHA maintains it did not initially schedule a hearing because Huff's "attorney could not be reached to confer on an agreeable date." Mathew's Decl. Ex. 1, at 5–6 (doc. 45-1). MCHA asserts the decision not to hold a hearing going forward was based on "a mutual agreement" with Huff's attorney to afford Huff an "opportunity to remedy" one of her family obligations; MCHA further contends Huff's hearing was "never denied, but it

_____

[4] MCHA maintains Huff was familiar with the facts underlying the HQS violations because she received a notice from her landlord that "spelled out" the violations. Def.'s Mot. Summ. J. 4 (doc. 44) (citing Mathews Decl. Ex. 3, at 11 (doc. 45-3); Ex. 5, at 11–19 (doc. 45-5)). MCHA concedes the "handling of Ms. Huff's termination was not done consistent with MCHA policy, and was one of the executive director's concerns about the case manager's performance." Id. at 4 (citing Mathews Decl. 17–18 (doc. 45-1)).

was delayed while MCHA worked with Ms. Huff's attorney to remedy the HQS violations so that she would not be terminated." Id. at 8–13; 19–21; 23–24. In their opposition to MCHA's motion for summary judgment, plaintiffs take issue with MCHA's characterization and rely on Huff's former counsel, who testified: "[I]f we had a denial, at least we would have an opportunity for a hearing. But we couldn't even get a denial from them. That was the frustration of dealing with the Housing Authority – we were in limbo, so we never got into details about the termination." James Dep. 21 (doc. 40-18). MCHA also maintains it was attempting to find a suitable hearing officer should Huff fail to remedy her HQS violations. Mathew's Decl. Ex. 6, at 11 (doc. 45-6).

On July 15, Huff and her children moved out of their home, without having received a move voucher from MCHA. Huff Decl. ¶ 18 (doc. 41) Unable to afford rent without a HAP subsidy, Huff and her children were homeless. Id. at ¶¶ 19–21. They put their belongings in storage and stayed with family, friends, and in a motel. Id.; see also Huff Dep. 44–46 (doc. 40-5).

In August 2016, Huff's attorney again contacted MCHA to request a hearing, informing MCHA that Huff and her children were homeless. Rena-Doxier Decl. Ex. 19 (doc. 40-19). Huff was unable to find housing to accommodate her entire family: her two older children stayed with her parents allowing them to remain in the same school; Huff and her youngest child stayed at a friend's house in Salem, Oregon, and slept in their living room. Huff Decl. ¶¶ 19–21 (doc. 41).

On October 10, MCHA issued a move voucher to Huff. Mathews Decl. Ex. 6, at 12 (doc. 45-6). Over two months later, on December 15, Huff entered into a new lease and was reunited with her two older children. Huff Decl. ¶24 (doc. 41); Huff Dep. 43 (doc. 40-5).

**STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

**DISCUSSION**

Plaintiffs assert MCHA deprived them of their procedural and substantive due process rights by: (1) denying Huff a "move voucher before the termination of [her] then-current tenancy" and "refusing to provide [Huff a hearing] when requested prior to the deprivation of a voucher;" (2) issuing notices of termination "that stated no, or inadequate, factual bases;" (3) "issuing notices of termination that did not provide sufficient, or any, time to request a hearing

prior to the effective date the termination;" and (4) "terminating [Blakely's] Program participation for failure to comply with obligations not imposed by federal law or regulations." Pls.' Mot. Summ. J. 16–17 (doc. 39). Plaintiffs argue the past and future risk of the deprivation of their due process rights warrants declaratory and injunctive relief.

MCHA asserts both plaintiffs' procedural and substantive due process claims fail as a matter law. MCHA concedes plaintiffs have a property interest in their housing benefits; however, MCHA argues plaintiffs' claims fail because neither Blakely nor Huff were "deprived of [a] property interest [and] even if they had been, MCHA did not have a policy or practice that was the moving force in that deprivation." Def's Mot. Summ J. 8–9 (doc. 44).

I.     42 U.S.C. § 1983 Claims

The Due Process Clause requires notice and opportunity to be heard in a meaningful and timely manner. Buckingham v. Sec. of the U.S. Dept. of Agr., 603 F.3d 1073, 1082 (9th Cir. 2010). The threshold requirement to prevail on a substantive or procedural due process claim is a deprivation of a property or liberty interest stemming from an "independent source such as state law." Wedges/Ledges of Cal. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir.1994); see also Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). In order to possess a property interest in a benefit, a party must have more than "an abstract need or desire for it" or "a unilateral expectation of it." Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). Rather, the party must possess "a legitimate claim of entitlement to it." Id.

To prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish: (1) a "violation of a right secured by the Constitution and laws of the United States;" and (2) that the violation "was committed by a person acting under color of state law." West v. Atkins, 487 U.S.

42, 48 (1988). In certain circumstances, a municipality may be held liable as a "person" under §
1983. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978). However, "a municipality
cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality
cannot be held liable under § 1983 on a *respondeat superior* theory." Id.

    There are three methods by which a plaintiff may establish municipal liability under
Monell. First, a local government may be liable where the "execution of a government's policy
or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to
represent official policy, inflict[s] the injury." Rodriguez v. City of Los Angeles, 891 F.3d 776,
802 (9th Cir. 2018) (quoting Monell, 436 U.S. at 694). Second, a local government can fail to
train employees in a manner that amounts to "deliberate indifference" to a constitutional right,
such that "the need for more or different training is so obvious, and the inadequacy so likely to
result in the violation of constitutional rights, that the policymakers of the [government entity]
can reasonably be said to have been deliberately indifferent to the need." Id. (quoting City of
Canton v. Harris, 489 U.S. 378, 390 (1989)). Third, a local government may be held liable if "the
individual who committed the constitutional tort was an official with final policy-making
authority or such an official ratified a subordinate's unconstitutional decision or action and the
basis for it." Id. at 802–03 (quoting Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1097 (9th Cir.
2013)). The first method is relevant here.[5] See Board of Cnty. Comm'rs of Bryan Cnty. v.

_____

[5] In the "Relevant Facts" section of plaintiffs' motion for partial summary judgment, plaintiffs
highlight that MCHA failed to "discipline or retrain" the caseworker assigned to Huff's case and
that "no MCHA employee was disciplined" regarding Blakely's termination notice. Pls.' Mot
Summ. J. 8, 13 (doc. 39). Such facts could be relevant to a failure to train liability theory. As
plaintiffs failed to sufficiently raise the argument, however, they have waived it. See Guatay
Christian Fellowship v. City of San Diego, 670 F.3d 957, 987 (9th Cir. 2011) ("[A] bare
assertion does not preserve a claim, particularly when, as here, a host of other issues are
presented for review.").

Brown, 520 U.S. 383, 407–08 (1997) (local government units may be liable if policy or custom caused a constitutional violation).

For municipal liability to attach to a "policy or custom" constitutional violation, the plaintiff must show the violation was: (1) "pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" and (2) that the policy was "the cause in fact [and] proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), modified by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001). Municipal liability "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino, 99 F.3d at 918. In other words, an unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. Monell, 436 U.S. at 691 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–168 (1970)). Further, a "municipality may be held liable when execution of a government's policy or custom . . . *inflicts* the injury." L.A. City, Cal. v. Humphries, 562 U.S. 29, 36 (2010) (emphasis added; quotation marks omitted).

Here, there is no dispute MCHA is a municipal agency and acted under color of state law. Thus, to prevail on plaintiffs' § 1983 claims, they must show: (1) a right secured to them under the Constitution and laws of the United States was violated – *i.e.*, a deprivation of plaintiffs' protected property interest in the use of their vouchers; (2) MCHA engaged in "longstanding practice or custom which constitutes the standard operating procedure" in violating that right;

and (3) MCHA's policy or practice inflicted an injury. See West, 487 U.S. at 48; Humphries, 562 U.S. at 36.

A.    Plaintiff Blakely

Blakely contends there is "overwhelming evidence that MCHA terminated [her] from the HCV Program on October 3, 2017, and did not rescind its termination until nearly a month later" and cites to evidence highlighting: (1) the termination notice itself had an "effective date" of October 3, the same day it was issued; (2) two MCHA caseworkers testified the effective date listed on the termination notices corresponds with the date the participant is terminated from the HCV Program; (3) Blakely and her caseworker both regarded her as "already terminated" on October 10; and (4) MCHA's November 1 notice rescinding the October 3 termination necessarily implies the termination occurred. Pls.' Opp'n Def. Mot. Summ. J. 4–6 (doc. 50). MCHA contends Blakely's claim fails because she "was never deprived of her property interest in participating in the HCV program." Def.'s Mot. Summ. J. 9 (doc. 44). Essentially, MCHA argues the "effective date" on a termination notice is not the equivalent of "terminat[ion] from the HCV program." Def.'s Opp'n Pls.' Mot. Summ. J. 6 (doc. 52). Rather, it argues, the effective date indicates the "date the [housing assistance payments] to the landlord will cease." Id.

After reviewing the record in its entirety and viewing the facts in the light most favorable to Blakely, the Court finds summary judgment is appropriate in favor of MCHA as to Blakely's due process claims. Significantly, Blakely's tenancy was never disrupted as a result of MCHA's issuance of a termination notice. Thus, Blakely's due process claims fail because she cannot establish the threshold requirement − i.e., the deprivation of a protected property interest. See Roybal v. Toppenish Sch. Dist., 871 F.3d 927, 931 (9th Cir. 2017) (procedural due process claim

requires establishing, *inter alia*, "a deprivation of a constitutionally protected . . . property interest") (citation omitted); Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007) (substantive due process claim "must, as a threshold matter, show a government deprivation of life, liberty, or property.") (citation and quotation omitted); see also Charles Wiper Inc. v. City of Eugene, 6:08-cv-6226-AA, 2011 WL 1541305, at *4 (D. Or. Apr. 21, 2011), aff'd, 486 F.App'x 630 (9th Cir. 2012) ("Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.") (citation omitted). In other words, Blakely cannot establish procedural or substantive due process violations because MCHA never actually *deprived* her of the benefit of her housing choice voucher – *i.e.*, the HAP subsidy to her landlord. See Roybal, 871 F.3d at 931; Action Apartment Ass'n, Inc., 509 F.3d at 1026.

The Court appreciates the apprehension an HCV participant must feel at the prospect of potentially wrongfully losing program participation; however, where, as here, no actual deprivation occurs a plaintiff cannot establish a *prima facie* due process claim. Moreover, MCHA worked with Blakely to ensure that the inspection required by the relevant regulations, did in fact occur, and then promptly rescinded her termination notice. See 24 C.F.R. § 982.551(d); Marshall Dep. 30 (doc. 45-2). As such, MCHA's motion for summary judgment on Blakely's procedural and substantive due process claims is granted; plaintiffs' motion for summary judgment as to Blakely's procedural and substantive due process claims is denied.[6]

---

[6] As the Court finds Blakely's claims fail because she cannot establish the threshold requirement of a deprivation of a protected property interest, this Opinion does not address Blakely's additional claims regarding the adequacy of timely notice of termination, the factual basis of the termination notices, as well as her claim she was terminated from the HCV program for failure to comply with obligations beyond those mandated by federal regulations. See Charles Wiper Inc, 2011 WL 1541305, at *4.

B.    Plaintiff Huff

1.    Substantive Due Process: Move Voucher and Hearing

Huff contends MCHA violated her substantive due process rights by refusing to issue a move voucher prior to the end of her tenancy and by refusing to provide her a hearing. Pls.' Mot. Summ. J. 20–22, 30–31 (doc. 39).

The concept of substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." Emmert Indus. Corp. v. City of Milwaukie, 450 F.Supp. 2d 1164, 1175 (D. Or. 2006), aff'd sub nom., 307 F.App'x 65 (9th Cir. 2009) (citing Nunez v. City of L.A., 147 F.3d 867, 871 (9th Cir. 1998)). Thus, to establish a substantive due process claim, a party must satisfy two elements: (1) a protectable interest; and (2) egregious official conduct that shocks the conscience.

First, as discussed above, plaintiffs have a well-established property interest in their housing vouchers. Second, Huff's claim cannot satisfy the requisite standard. The Supreme Court's cases dealing with abusive action have "repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" City of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). The constitutional concept of "conscience-shocking" action:

> duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. [Thus,] the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.

Id.

The Court finds the record does not support a claim of egregious official conduct under the Supreme Court's jurisprudence. Although at oral argument MCHA conceded some of its conduct was likely negligent regarding its administration of Huff's request for a move voucher, such as failing to timely secure a hearing officer, such conduct falls short of the conscience-shocking standard. See Lewis, 523 U.S. at 846 ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). Indeed, procedural deficiencies in the administration of a government program generally do not give rise to substantive due process claims. See Sylvia Landfield Tr. v. City of Los Angeles, 729 F.3d 1189, 1195 (9th Cir. 2013). MCHA's motion for summary judgment on this claim is granted; plaintiffs' motion is denied.

### 2.    Procedural Due Process: Move Voucher and Hearing

Huff next argues MCHA violated her procedural due process rights in depriving her "of the use of her move voucher, and thus her property interest in the voucher, without a hearing," and argues this case is analogous to Jackson v. City of Aiken Hous. Auth., 2017 WL 4324856 (D.S.C. Sept. 26, 2017). Pls.' Mot. Summ. J. 17–31 (doc. 39). MCHA concedes Huff has a property interest in the "benefits provided by [the HCV] program," but declined to address Huff's reliance on Jackson. Def.'s Mot. Summ J. 8–9 (doc. 44).

In Jackson, a PHA refused to issue a move voucher based on an alleged policy violation and failed to hold a hearing on the plaintiff's status in the program. Jackson, 2017 WL 4324856 at *3. The court found that "an indefinite refusal to process" a move voucher was effectively a termination of HCV assistance and granted partial summary judgment as to the plaintiff's procedural due process claim. Id. at *3–4. The court reasoned "the issue [was] not whether a

proper basis existed upon which to deny [the HCV Program participant's] transfer request, it [was] whether [the PHA] provided [the HCV Program participant] with the constitutionally required procedural due process when denying [the participant's] transfer request." Id. at *3. This Court is persuaded by Jackson and adopts its reasoning in finding MCHA's failure to provide Huff a hearing ran afoul of procedural due process.

As noted, MCHA declined to address Jackson and argues instead the delay in processing Huff's move voucher request "was the result of [her] pending Notice of Termination based, in substantial part, on [Huff's] HQS violations," which the relevant regulations permit. Def.'s Opp'n Pls.' Mot. Summ. J. 4 (doc. 52). As discussed above, this contention runs contrary to the reasoning in Jackson insofar as MCHA argues the alleged HQS wholly relieved it from providing any process on Huff's move voucher request. Moreover, a plain textual reading of the regulations MCHA relies on reveals such a delay was unjustified.

MCHA directs the Court to 24 C.F.R. § 982.354(e)(2),[7] which provides a PHA may deny permission to move where there are grounds for termination of assistance pursuant to 24 C.F.R. § 982.552. Section 982.552(c)(1)(i)[8] authorizes a PHA to terminate assistance "[i]f the family violates any family obligations under the program (see § 982.551)." Section 982.551(c), in turn, explains the "family is responsible for an HQS breach." However, the regulation setting forth the informal hearing procedures limits a PHA's authority to terminate assistance based on HQS

---

[7] MCHA's briefing cites 24 C.F.R. § 982.314 for this proposition. HUD, however, re-designated that regulation as 24 C.F.R. § 982.354 effective September 21, 2015. As such, the Court will apply the applicable regulations in place at the time of the alleged conduct in the complaint.

[8] MCHA's briefing cites 24 C.F.R. § 982.552(c)(i) for this proposition, which the Court was unable to locate in the Code of Federal Regulations. As such, the Court will assume for the purposes of the pending cross-motions for summary judgment MCHA intended to cite 24 C.F.R. § 982.552(c)(1)(i), which seems, to some extent, supportive of MCHA's argument.

violations. See 24 C.F.R. § 982.555. That regulation requires PHAs to hold a hearing prior to any termination based on an HQS violation. 24 C.F.R. § 982.555(b)(6) ("the PHA must provide the opportunity for an informal hearing for a decision to terminate assistance for a breach of the HQS caused by the family as described in § 982.551(c)").

Thus, reading the regulations in context demonstrates a PHA may deny a move voucher based on an HQS violation; however, in doing so, the PHA must then promptly hold a hearing on the underlying HQS violation. 24 C.F.R. § 982.555(b)(6); 24 C.F.R. § 982.555(d) ("Where a hearing for a participant family is required under this section, the PHA must proceed with the hearing in a reasonably expeditious manner upon the request of the family."). Accordingly, MCHA's argument the delay was based on Huff's alleged HQS violations fails, because upon determining that HQS violations exist triggering termination from the program, the regulations require a PHA to promptly hold a hearing. MCHA failed to do so here. As such, although MCHA may have had the legal justification to deny Huff a move voucher based on HQS violations in the event it sought to terminate her from the program, such an action required MCHA to hold a hearing. Failing to do so was a violation of the relevant regulations and a violation of Huff's procedural due process rights.

Plaintiffs argue refusing to issue a move voucher was "MCHA's longstanding practice." Pls.' Mot Summ. J. 20 (doc. 39). MCHA contends its "policies require that [MCHA] determine eligibility for a move voucher within 10 days after receiving the request. A move voucher is then required to be issued within 20 days after the eligibility determination." Def.'s Opp'n Pls.' Mot. Summ. J. 4 (doc. 50) (citations omitted). Specifically, the argument fails to respond to the uncontroverted evidence presented by plaintiffs that MCHA's "longstanding practice or custom"

was to issue move vouchers only after termination of a participant's current tenancy.[9] Pls.' Mot Summ. J. 20 (doc. 39). Fed. R. Civ. P. 56(e) provides that in opposing a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Here, MCHA failed to provide justification why a review of responsive files in the parties' stipulations between 2013 through 2017 revealed 79% of move vouchers contained an "'Issue Date' stated on the move voucher [] on or after the date the HCV participant's existing tenancy was scheduled to terminate." Rena-Doxier Decl. Ex. 31, Stipulation Nos. 6–7 (doc. 40-31). The Court finds this uncontradicted evidence sufficient under Monell to establish a "longstanding practice or custom which constitutes the standard operating procedure."

Further, MCHA's failure to issue a move voucher inflicted Huff's injury because she was in fact deprived of the benefit of her voucher from July through October 2016. See Humphries, 562 U.S. at 36; Rabinovitz v. City of Los Angeles, 287 F.Supp.3d 933, 965 (C.D. Cal. Mar. 2, 2018) (citation omitted) (granting summary judgment on policy or custom theory finding a "direct causal link" between underlying constitutional violation and municipal policy).

---

[9] At oral argument, MCHA effectively conceded it was the practice of some staff members to issue a move voucher one day after a tenancy ended to prevent participants from receiving assistance for two units at any one time. MCHA's counsel, however, advanced the argument that specific practice did not occur in Huff's case. This argument fails for two reasons. First, plaintiffs do not allege MCHA's longstanding practice was to issue move vouchers specifically one day after the then-current tenancy ended. Rather, they argue MCHA had a longstanding practice of "withhold[ing] vouchers until participants' tenancies expired," which did occur in Huff's case. Pls.' Mot. Summ. J. 19 (doc. 39). Second, and more importantly, taking the practice described to its logical conclusion, issuing a move voucher the day after a tenancy expires defeats the purpose of a move voucher by requiring a participant to effectively become homeless – for even a short period of time – before the participant is eligible for a move voucher.

Finally, MCHA's argument that Huff was never terminated from the program ignores the fact Huff was rendered homeless by not receiving HCV assistance. Def.'s Reply 5 (doc. 57). The Court similarly finds unpersuasive MCHA's assertion the "delay was not the result of any formal MCHA policy or of any deliberate indifference on the part of MCHA's policymakers[.]" Id. Huff has made a sufficient showing that MCHA had a longstanding practice of refusing to timely issue move vouchers.

Thus, there is no disputed issue of material fact that MCHA failed to provide sufficient process in refusing to issue Huff a move voucher before the termination of tenancy and refused to provide her a hearing. Jackson, 2017 WL 4324856 at *4; see also Orullian v. Hous. Auth. of Salt Lake City, 2011 WL 6935039, at *6 (D. Utah Dec. 30, 2011) ("In denying [HCV participant's] request to move and not providing her with the right to an informal hearing, the Housing Authority violated [the HCV participant's] right to due process and federal law as codified in 24 C.F.R. 982.555.") (citation omitted). As such, plaintiffs' motion for summary judgment is granted and MCHA's motion is denied as to this issue.

3.     Procedural Due Process: Lack of Factual Basis in Termination Notices

Huff next argues the termination notices she received in June and July 2016 were constitutionally deficient. Pls.' Mot. Summ. J. 22–26 (doc. 39). Specifically, Huff contends neither notice "stated any facts sufficient" to inform her as to MCHA's basis for terminating her participation in the HCV Program. MCHA counters Huff "readily understood the facts underlying the Family Obligations violations on which her termination notices were based." Def.'s Opp'n Pls.'s Mot. Summ. J. 5 (doc. 52). MCHA directs the Court to a deposition in which Huff testified she had "received [a Family Obligations form] on more than one occasion," as well

as a copy of what appears to be a "Notice of Cause Termination" form sent to Huff signed by her former landlord. Id. (citing Def.'s Mot. Summ J. (doc. 44) (citing Mathews Decl. Ex. 6, at 15–19 (doc. 45-6)).

To satisfy procedural due process in the context of terminating public housing benefits, a notice must be "sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at [a] hearing appearance." Billington v. Underwood, 613 F.2d 91, 94 (5th Cir. 1980).

Here, the notices were constitutionally deficient. The June 2016 Termination Notice included no factual support and only apprised Huff she was being terminated from the HCV Program "DUE TO EVICTION BY LANDLORD." Rena-Doxier Decl. Ex. 9 (doc. 40-9) (capitalization in original). Similarly, the July 2016 Termination Notice included only the regulatory text of the Family Obligations Huff was alleged to have violated, and lacked factual allegations "sufficiently specific for [Huff] to enable [herself] to prepare rebuttal evidence to introduce at [her] hearing appearance." Billington, 613 F.2d at 94; Rena-Doxier Decl. Ex. 6 (doc. 40-6). "The purpose of notice is to sufficiently notify [an HCV Program recipient] of the reasons for the decision to terminate her benefits so that she [has] an effective opportunity to defend herself." Pratt v. Hous. Auth. For City of Camden, 2006 WL 2792784, at *7 (D.N.J. Sept. 27, 2006) (citing Goldberg, 397 U.S. at 268); see also Edgecomb v. Hous. Auth. of Town of Vernon, 824 F.Supp. 312, 315 (D.Conn. 1993) ("The notice merely restated the regulation relied on. A notice which 'merely parrot[s] the broad language of the regulations' is insufficient.") (citation omitted).

Plaintiffs also take issue with MHCA's policy "that it need not state any facts on notices of termination," and that "MHCA requires only that notices of termination from the HCV

Program must state the rule or regulation that was allegedly violated by the HCV Program participant." Pls.' Mot. Summ. J. 24–26 (doc. 39). Indeed, plaintiffs introduced evidence that MHCA policy is to not include a factual basis on termination notices. <u>See</u> Marshall Dep. 96 (doc. 40-27); Rena-Doxier Decl. Ex. 32, at 2 (doc. 40-32).

MCHA failed to cite, and the Court is unaware of, any law or regulation supporting its assertion that a private landlord's termination notice is sufficient to meet procedural due process standards. Def.'s Opp'n Pls.' Mot. Summ. J. 5 (doc. 52). Indeed, at least one district court has reached the opposite conclusion. <u>See</u> Pratt, 2006 WL 2792784, at *10 (rejecting housing authority's attempt to supplement deficient notice with landlord-letter because doing so would relieve housing authorities of their due process obligations, explaining "to hold otherwise would permit housing authorities to fail to fully comply with federal regulations when they believe that the recipient already knows of the basis for his termination"). The Court is unpersuaded by MCHA's contention that informing a party of "her right to request additional information," or that Huff independently had actual knowledge of the factual basis of termination, is sufficient to relieve a public entity's procedural due process obligations to include a factual basis for the termination of a protected property interest. Def.'s Opp'n Pls.' Mot. Summ. J. 5 (doc. 52).

At oral argument, MCHA conceded the notices did not provide factual bases. MCHA argued, however, because no hearing was ever held, any inadequacy in the notice could not have caused Huff's deprivation of HCV benefits. The Court finds the argument unavailing. In essence, MCHA asks the Court to transform its procedural due process violation of failing to afford Huff a hearing into an escape hatch for its procedural due process violation of omitting a factual bases from its termination notices. The Court declines to do so.

Rather, MCHA's policy inflicted an actual injury on Huff because she was unable to contest her deprivation of HCV benefits meaningfully as she was not put on notice by MCHA of its factual bases for her termination. MCHA violated Huff's procedural due process rights by failing to provide an adequate factual basis within the termination notice itself. See Billington, 613 F.2d at 94; Pratt, 2006 WL 2792784, at *13 (granting summary judgment for plaintiff based on due process violations for, *inter alia*, failure "to provide proper notice"). As such, plaintiffs' motion for summary judgment as to Huff is granted and MCHA's motion is denied as to this issue.

### 4.   Procedural Due Process: Adequacy of Opportunity to Request a Hearing

Huff next argues MCHA violated her procedural due process rights by issuing a notice of termination that took effect before she could request a hearing. Pls.' Mot. Summ. J. 26–29 (doc. 39). Specifically, Huff alleges she was issued a termination notice on June 1, 2016, with an effective date of June 9, 2016. That notice provided Huff could request a hearing within ten days.

MCHA maintains Huff's June 1 termination notice was later voided and the July 1 termination had an effective date of July 15, 2016. MCHA's argument is well taken. Although there were defects in other respects as to how MCHA administered Huff's termination notice and move voucher, the record reflects the June 1 termination notice was rescinded the following day. Rena-Doxier Decl. Ex. 13 (doc. 40-13). Moreover, the July 1 termination notice supplied a timeframe for requesting a hearing that complied with procedural due process because its effective date provided sufficient time for Huff to request a hearing. Thus, Huff cannot establish MCHA's policy or custom regarding the time allotted to conduct a hearing subsequent to issuing a termination notice "inflicted" an injury upon her. As such, Huff cannot establish she is entitled

to summary judgment on this claim and, moreover, the claim fails as a matter of law. Plaintiffs' motion is denied; MCHA's motion is granted as to this issue.

II.    Remedy

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows individuals to seek a declaration of the constitutionality of the disputed governmental action. See Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 71 n.15 (1978). To issue declaratory relief, the Court must address two conditions. "First, the court must inquire whether there is a case of actual controversy within its jurisdiction." Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994). Second, "the court must decide whether to exercise that jurisdiction. The statute gives discretion to courts in deciding whether to entertain declaratory judgments[.]" Id. at 143–44.

To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Arizona Dream Act Coal. v. Brewer, 855 F.3d 957, 977 (9th Cir. 2017), cert. denied, 138 S. Ct. 1279 (2018) (citation omitted). The Supreme Court has reiterated "the longstanding maxim that injunctive relief against a state agency or official must be no broader than necessary to remedy the constitutional violation." Armstrong v. Davis, 275 F.3d 849, 870 (9th Cir.2001) (citing Lewis v. Casey, 518 U.S. 343, 359 (1996).

Regarding declaratory relief, plaintiffs fail to argue, with specificity, why the Court should exercise its discretion and grant declaratory relief. Regarding their request for injunctive relief, plaintiffs assert that a "realistic possibility" exists they are at risk of future harm because

they remain participants in the HCV Program administered by MCHA. Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001) abrogated on other grounds by Johnson v. California, 543 U.S. 499 (2005) accord Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 967 (9th Cir. 2018). MCHA opposes both forms of relief.

At this juncture, the Court declines to issue a permanent injunction. First, plaintiffs' reliance on Armstrong is not persuasive as that case was a prisoner class-action suit. See Armstrong, 275 F.3d at 871 ("class certification serves to alter the court's inquiry: when a class is properly certified, the injury asserted by the named plaintiffs at the standing stage of our inquiry is asserted on behalf of all members of the class"). Second, MCHA represents it has issued administrative advisories correcting the deficiencies at issue, therefore, the Court finds plaintiffs' broad prospective relief is not warranted.[10] That said, the Court will entertain limited briefing on declaratory relief as outlined below.

III.    Case Schedule

The parties are ordered to confer and submit a proposed case schedule to the Court within twenty-one (21) days of this Opinion regarding: (1) the parties' interest in settlement in light of the Court's rulings; (2) a proposed briefing schedule for a trial on damages; and (3) a proposed briefing schedule, not to exceed five (5) pages from each party, on whether declaratory relief is warranted.

---

[10] An independent review of the case law reveals issuance of a permanent injunction in the HCV context is rare; however, at least one district court has granted prospective injunctive relief for violations of procedural due process in the HCV context. See Evans v. Hous. Auth. of the City of Raleigh, Inc., 2006 WL 6872567 (E.D.N.C. Jan. 28, 2006). Evans, however, is distinguishable from this case because the scope of the injunction was limited to enjoining the PHA from "terminating Plaintiff's Section 8 housing *on the basis of the previously established record*," in contrast to the broad relief plaintiffs seek here. Evans, 2006 WL 6872567, at *4 (emphasis added).

**CONCLUSION**

For the reasons set forth above, plaintiffs' motion for partial summary judgment (doc. 39) and MCHA's motion for summary judgment (doc. 44) are GRANTED in part and DENIED in part as described above. Plaintiffs' request for a permanent injunction is DENIED; the Court reserves ruling on plaintiffs' request for declaratory relief. Finally, any damages will be determined at trial.

IT IS SO ORDERED.

DATED this 8th day of August 2018.


s/Jolie A. Russo_____
JOLIE A. RUSSO
United States Magistrate Judge